UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

AFSHIN MASHELI,

        Petitioner,                                Case No. 1:25-cv-1577

v.                                              Honorable Paul L. Maloney

KRISTI NOEM et al.,

        Respondents.
_____/

**<u>OPINION</u>**

      Petitioner Afshin Masheli initiated this action on November 24, 2025, by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Eastern District of Michigan. (Pet., ECF No. 1.) Petitioner is a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan. (*Id.*, PageID.2.)

      Respondents filed their response (ECF No. 10) on December 5, 2025. Petitioner filed a reply (ECF No. 12) on December 8, 2025. On December 16, 2025, the Petitioner filed an "Emergency Motion for Temporary Restraining Order and Preliminary Injunction," seeking release on his existing order of supervision. (ECF No. 13, PageID.41.)

      Petitioner challenges the lawfulness of his current detention and asks the Court to reject Respondents' argument that his petition is unripe because six months of post-order detention had not fully elapsed at the time the petition was filed and to order Respondents to release Petitioner or to show that removal is scheduled or otherwise significantly likely in the immediate future. (Reply, ECF No. 12, PageID.36–37.)

**Discussion**

**I.    Factual Background**

Petitioner "is a native and citizen of Iran who was admitted into the United States on December 19, 1991, on a visitor's visa at Chicago, Illinois, with authorization to remain until June 19, 1992. (Koval Decl. ¶ 4, ECF No. 10-1, PageID.16.) On May 24, 1993, Petitioner was convicted of first-degree retail fraud in the 20th Circuit Court in Grand Haven, Michigan. (*Id.* ¶ 8.) On October 29, 1993, Petitioner was granted advance parole to travel to Mexico to complete his application for adjustment of status to that of a lawful permanent resident. (*Id.* ¶ 5.) On November 12, 1993, Petitioner was paroled into the United States at El Paso, Texas, and on July 26, 1995, Petitioner became a lawful permanent resident. (*Id.* ¶ 6–7.)

On February 25, 2003, Petitioner "was convicted in the 17th Circuit Court in Grand Rapids, Michigan for the offense of Criminal Sexual Conduct – 1st Degree (Personal Injury)" (*Id.* ¶ 9–10), as well as for the offense of "Criminal Sexual Conduct – 3rd Degree." (*Id.*) Petitioner received prison sentences of "between 5 years and 6 months to 50 years" and "between 3 years to 15 years." (*Id.*)

As a result of the convictions, Petitioner was charged with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA). (*Id.* ¶ 11.) On May 25, 2005, an immigration judge in the Detroit Immigration Court denied Petitioner's applications for relief and ordered him removed to Iran. (*Id.* ¶ 12.) Petitioner's subsequent appeal was denied on July 3, 2007, resulting in a final order of removal to Iran. (*Id.*)

In October of 2007, Petitioner was released from custody and was placed on an Order of Supervision. (*Id.* ¶ 13.) However, in March of 2010, Petitioner was again placed in custody detained for a period of approximately three months. (*Id.* ¶ 14.) In June of 2010, following a Post-Order Custody Review, Petitioner was again released from custody and placed on an order of

supervision. (*Id.* ¶ 15.) Petitioner remained on supervision until June 22, 2025, when he was arrested near Dearborn, Michigan, based on the final order of removal. (*Id.* ¶ 16.)

On July 2, 2025, ICE (Immigration and Customs Enforcement) submitted a travel document request, which remains pending. (*Id.* ¶ 17.) In his declaration, Deportation Officer Koval states that ICE anticipates that a travel document will be issued to remove Petitioner to Iran and that there is a "significant likelihood of removal in the reasonably foreseeable future." (*Id*) "A Post-Order Custody Review is pending a decision by ERO (Enforcement and Removal Operations) headquarters." (*Id.* ¶ 18.)

## II.   Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III.   Merits Discussion

### A.   Statutory Basis for Petitioner's Detention

Petitioner argues that his ongoing detention violates 8 U.S.C. § 1231 because the Government continues to detain him when it is not likely that it will be able to deport him to Iran in the reasonably foreseeable future. (Reply, ECF No. 12, PageID.31–32.) Therefore, Petitioner asserts that his detention is governed by *Zadvydas. See id.* at PageID.20–22. (*Id.*)

As noted above, Petitioner has had a final order of removal in place since July of 2007. (Resp., ECF No. 10, PageID.9.) Petitioner was detained by ICE on two separate occasions and was

most recently released from custody and placed on an Order of Supervision in June of 2010. (*Id.*) Petitioner remained on supervision until he was taken into ICE custody on June 22, 2025. (*Id.*) Petitioner cites *Zadvydas v. Davis*, 533 U.S. 678 (2001) and contends that ICE lacks authority to detain him indefinitely and states that he has been in custody for nearly six months, which is the presumptive limit for what is reasonably necessary to effect removal. (Pet. Brief, ECF No. 1-1, PageID.25.) Respondents, however, counter that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a). (Resp., ECF No. 10, PageID.10.)

In their response, Respondents assert that Petitioner's detention does not implicate the constitutional concerns identified in *Zadvydas*, 533 U.S. at 701 because at the time Petitioner filed the petition, his detention had lasted less than six months. (*Id.*) In addition, Respondents assert that they have requested a travel document and that removal is reasonably foreseeable. (*Id.*, PageID.11.)

In *Zadvydas*, The United States Supreme Court outlines the essential inquiry for a habeas court faced with administrative detention beyond the presumptive six-month limit:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon violation of those conditions.

*Zadvydas*, 533 U.S. at 699-700. "[W]here detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." *Id.* at 690. Under *Zadvydas*, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 701.

4

In *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022), the Supreme Court confirmed that *Zadvydas* hinged on its interpretation of the scope of § 1231(a)(6) based on the canon of constitutional avoidance. *Id.* at 579. In *Arteaga-Martinez*, the Court held that, as a matter of statutory interpretation, § 1231(a)(6) does not require a bond hearing after six months of detention. *Id.* at 580–81. However, the Court declined to address the detainee's constitutional claim that due process principles demanded a bond hearing. *Id.* at 583. The Court acknowledged the Government's position that "as-applied constitutional challenges remain available to address 'exceptional' cases," but left the issue of as-applied challenges for "lower courts to consider in the first instance." *Id.*

As noted above, at the time the petition was filed on November 24, 2025, Petitioner had been in custody for less than six months, during which the period of detention is presumed to be reasonably necessary to secure removal. However, at the time of this opinion, Petitioner's custody has reached the six-month. Therefore, the Court will address Petitioner's assertion that his detention is no longer reasonably necessary to secure removal. As set forth in *Zavadas*:

> After [the] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*, 533 U.S. at 701.

Petitioner has the burden of providing a "good reason to believe" that no such likelihood exists. *Zavadas*, 533 U.S. at 701. In this case, Petitioner states that there has been a final order of removal since 2007 and that he has been twice detained and then released on supervision when removal did not occur. (Reply, ECF No. 12, PageID.31–32.) Plaintiff further asserts that in his

5

current detention, a single travel document request was made by ICE in July of 2025, and that it remains unanswered. (*Id.*, PageID.32.) Petitioner states that this is sufficient evidence to give the Court "good reason to believe" that his removal is unlikely in the reasonably foreseeable future. (*Id.*, PageID.31–32.) The Court concludes that the fact that the government has been unsuccessfully attempting to remove Petitioner to Iran since 2007 provides a good reason to believe that there is a "significant likelihood" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvyadas*, 533 U.S. at 701.

Because Petitioner has met this burden, Respondents must respond with evidence sufficient to rebut that showing. *Id.*, 533 U.S. at 701. If the Government fails to "respond with evidence sufficient to rebut that showing," the detainee must be released under conditions of supervision. *Id.* at 700–01. As noted by Petitioner, Respondents' sole evidence is the assertion that a travel document has been requested more than five months ago and that there is a "significant likelihood of removal in the reasonably foreseeable future." (Koval Decl. ¶ 17, ECF No. 10-1, PageID.19.) Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvvadas*, 533 U.S. at 701.

### B. Fifth Amendment Due Process Considerations

Petitioner contends further that "prolonged detention without a bond hearing is unconstitutional," and that "detention post-order is limited and removal is not reasonably foreseeable because Respondents . . . have taken no steps to effect removal." (Am. Pet., ECF No. 10, PageID.53.) Respondents counter Petitioner's arguments by stating that his detention does not violate the Fifth Amendment because neither § 1231 nor the Constitution "require that he receive a bond hearing during his detention under § 1231." (Resp., ECF No. 13, PageID.74.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." *See* 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *See id.* § 1231(a)(2)(A). Here, as noted above, Petitioner was taken into custody by ICE on August 20, 2025. The 90-day removal period, therefore, expired as of November 18, 2025.

After the 90-day removal period has expired, a noncitizen may continue to be detained. *See id.* § 1231(a)(6). Moreover, the Supreme Court has held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen "for a presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Following that six-month period, "once [an] alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

As of the date of this opinion, Petitioner been detained for the six-month presumptively reasonable period of detention approved by the Supreme Court in *Zadvydas*, and Petitioner has met his burden of showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. In addition, Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing. *Id.*

The Court, therefore, will grant Petitioner's amended § 2241 petition.

### IV. Other Claims and Other Forms of Relief

Because the Court will conditionally grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

### V. Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all of the other named Respondents. The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the ICE Detroit Field Office Director and the Secretary for the Department of Homeland Security as Respondents. The Court will dismiss the United States Department of Homeland Security, the Attorney General of the United States, and the Executive Office for Immigration Review as Respondents.

### Conclusion

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject to an appropriate order of supervision, within ten days of the date of this Court's opinion and judgment. The Court will also

8

order Respondents to file a status report within fourteen days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. Further, the Court will dismiss the United States Department of Homeland Security, the Attorney General of the United States, and the Executive Office for Immigration Review as Respondents.

Dated:   January 22, 2026              /s/ Paul L. Maloney
                                       Paul L. Maloney
                                       United States District Judge